[Civ. No. 40876. Second Dist., Div. One. Mar. 15, 1974.]

GEORGIE A. COULTER, Plaintiff and Respondent, v. BOARD OF EDUCATION OF THE TEMPLE CITY UNIFIED SCHOOL DISTRICT et al., Defendants and Appellants.

## COUNSEL

John D. Maharg and John H. Larson, County Counsel, Howard R. Gilstrap and Donovan M. Main, Deputy County Counsel, for Defendants and Appellants.

Levy, Van Bourg & Hackler, Howard Berman and Susan Salisbury for Plaintiff and Respondent.

## OPINION

**WOOD, P. J.**—Petitioner (below) Georgie A. Coulter has been employed as a teacher by the Temple City Unified School District since September 1959. In April 1971, after she had acquired tenure, her husband was elected to serve as a member of respondent (below) Board of Education of said district. Thereafter, she received and accepted a notice of employment from the district for the 1971-1972 school year; and she commenced and continued such employment. In August 1971, her husband, as a member of the board, voted in favor of a 2 percent cost of living increase in salary for employees of the district, and in favor of an increase in medical insurance coverage for such employees. Respondent (below) officers, acting in their official capacity, withheld authorization, execution, and delivery of salary warrants to petitioner for her services on the ground that conflict of interest by her husband voided her right to compensation under the 1971-1972 salary schedule. Thereupon, petitioner (on October 20, 1971) filed this petition for a writ of mandamus compelling respondent officers to authorize, execute, and deliver to petitioner warrants for compensation due for her services.[1] Her petition was granted; and judgment was entered directing respondent officers to authorize and make an order for all compensation due her as a certified teaching employee, to draw a requisition and warrant for payment thereof, to deliver the warrant to petitioner, and to restore

---

[1]The court found that she assumed her duties on September 1, 1971, and continued performance thereof; and that she did not receive any warrant for her salary.

to her all rights and benefits which she would have received but for the refusal to pay her compensation. Respondents (board and officers) appeal from the judgment.

Appellants contend that petitioner's husband has a financial interest in her contract of employment which interest renders the contract void under sections 1174 and 1177 of the Education Code and section 1090 of the Government Code; that section 1175.5 of the Education Code does not prevent invalidity of the contract; that if section 1175.5 permits such conflict of interest, then it violates article IV, section 16 of the California Constitution (which provides that a local or special statute is invalid if a general statute can be made applicable); and respondents are prohibited from paying any warrant to her because her services were performed under a void contract.

It does not appear that there is any controversy as to the facts. Findings were in substance as follows:

Since September 1959 the petitioner has been a certificated employee of the school district, and she has performed services since that time as a teacher of English at the high school. During the 1970-1971 school year, she was employed at Step 11, Class 5 of the district's salary schedule, and received an annual salary for that year in the amount of $14,590, paid in 10 monthly installments from September 1970 to June 1971.

On May 3, 1971, she received a notice of employment whereby the district offered her employment as a permanent teacher for the 1971-1972 school year at said step and class level. The notice informed her that her estimated salary would not be less than $14,590 for the year; that her services would commence September 1, 1971; that her actual salary would be fixed by the board prior to the first day of service; and that it would be paid at the rate of not less than $1,459 a month for 10 calendar months, commencing as soon as possible after September 1, 1971.

Petitioner executed and returned the notice prior to July 1, 1971, and indicated that she accepted the offer of employment and would report for duty as directed.

In an election on April 20, 1971, the voters of the district elected petitioner's husband to serve as a member of respondent Board of Education. On July 18, 1971, he took his seat on the board and voted on matters coming before it. At a meeting of the board on August 2, 1971, the members (including petitioner's husband) unanimously passed a motion to grant all employees of the district a 2 percent cost-of-living increase over the 1970-1971 salary schedule, and unanimously passed a motion to increase

the district's participation in a medical plan for employees. By reason of promulgation by the President of an executive order referred to as the "Wage-Price Freeze," salary warrants received by certificated employees of the district for the months of September, October and November 1971 did not reflect said 2 percent cost-of-living increase. At a meeting on September 13, 1971, the board considered personnel recommendations by the district administration, including a recommendation that three teachers, including petitioner, be assigned to home-teaching at an hourly rate of $6.67 as needed. Petitioner's husband abstained from voting on a motion to defer consideration of said recommendation, and it passed. Subsequently, petitioner withdrew her name from consideration as a home teacher. No evidence was offered regarding any other occasion where action by the board since petitioner's husband took office could have affected petitioner's compensation in a manner distinct from other certificated employees of the district.

On September 1, 1971, petitioner assumed her position as teacher of English at the high school for the eleventh consecutive year, and since that time she performed all duties required of a certificated employee in that position. Notwithstanding performance of said duties, petitioner did not receive her salary warrants for the months of September, October and November 1971. Payment of salary warrants has not been made to her because respondents Clowes and Goldstein, acting upon advice of the Los Angeles County Counsel, have refused to authorize, execute and deliver the salary warrants to the board, "deeming" that a conflict of interest existed between petitioner and her husband that "voided her right" to receive compensation for services rendered by her to the district since September 1, 1971.[2]

Conclusions of law were in substance as follows:

Petitioner, as a tenured, certificated employee, had a vested right to continued employment and to compensation for instructional services rendered; such rights could only be denied by showing cause for dismissal in accordance with procedures set forth in the Education Code sections 13304, 13403, 13502, 13503, 13506; and said rights existed irrespective of whether the district entered into a contract with her. Respondents Clowes and Goldstein were without legal authority to withhold salary of a tenured employee on the ground of asserted financial interest by her husband in

---

[2]Respondents have not asserted in the trial court or in this court that petitioner should be discharged from her position. Their assertion is that she should not be paid for her services as a teacher because the contract of employment was voided by reason of conflict of interest by her husband.

her contract of employment where his election to the board and the board's action to increase compensation of employees occurred subsequent to her acquisition of tenure. The action of her husband in voting for the cost-of-living increase while she was a tenured employee did not violate section 1174 of the Education Code, since such action was excluded from that section by the provisions of section 1174.5 of said code. Her husband's relationship to petitioner was disclosed to and known by the other members of the board and noted in the minutes prior to the vote; the board adopted the minutes in good faith by sufficient vote without counting his vote; the board's action was just and reasonable; and none of the circumstances set forth in section 1175 of said code existed so as to remove the vote from the protection afforded by said section 1174.5. Even if it were assumed that petitioner's relationship with the district was contractual and not statutory, it was not void under section 1177 because the salary increase was not made in violation of section 1174. Sections 1090-1096 of the Government Code do not apply to members of the governing boards of school districts because section 1175.5 of the Education Code provides that validity of a contract by the board where a member thereof is interested in the contract is governed exclusively by provisions of the Education Code and supersedes all other laws except those specifically referring to members by governing boards of school districts; and although section 1097 of the Government Code specifically refers to members of such governing boards, it pertains only to criminal sanctions, and does not provide for authority to withhold salary due an employee where the employee's spouse is a member of the board. Accordingly, petitioner is entitled to payment of all salary which she has been denied, together with interest thereon at the rate of 7 percent per annum on each increment thereof from the date it became due until the date of entry of judgment, and to reinstatement of other benefits which she would have received but for such refusal to pay compensation.

■    Section 1174 of the Education Code provides: "No member of the governing board of any school district shall be interested in any contract made by the board of which he is a member."

Section 1174.5 of said code provides: "Except as provided in Section 1175, no contract or other transaction entered into by the governing board of any school district is either void or voidable under the provisions of Section 1174 . . . if the circumstances specified in the following subdivisions exist:

"(a) The fact of such interest is disclosed or known to the governing board and noted in the minutes, and the governing board thereafter au-

thorizes, approves, or ratifies the contract or transaction in good faith by a vote sufficient for the purpose without counting the vote or votes of such interested member or members, and

"(b) The contract or transaction is just and reasonable as to the school district at the time it is authorized or approved."

Section 1175 of said code provides in substance that the provisions of section 1174.5 shall not be applicable if the contract or transaction is between the district and a member of the board, or a partnership, unincorporated association, or corporation in which the member holds an interest directly or indirectly; or where a board member, without first disclosing his interest to the board, influences or attempts to influence another member or members to enter into the contract or transaction.

Section 1175.5 of said code provides: "The question of the validity or invalidity of a contract or other transaction entered into by the governing board of any school district where a member of the governing board of that district is interested in such contract or transaction . . . *shall be exclusively governed by the provisions of the Education Code which are hereby declared to and shall supersede* (1) any and all provisions of law contained in any code or law of this State, except those which specifically refer to members of the governing board of school districts and which might otherwise be applicable and (2) any and all provisions of law contained in any charter or ordinance of a city, county or city and county, which might otherwise be applicable." (Italics added.)

Section 1177 of said code provides in part that any contract made in violation of section 1174 is void.

In the present case, the court found that the husband's relationship to petitioner was disclosed to and known by the other members of the board and noted in the minutes prior to the vote; that the board adopted the minutes in good faith by sufficient vote without counting his vote; that the board's action was just and reasonable; and that none of the circumstances set forth in section 1175 existed so as to remove the vote from the provisions of section 1174.5. The court concluded that the husband's action in voting as a member of the board did not violate section 1174, since such action was excluded from that section by reason of the provisions of section 1174.5; and that even if it were assumed that petitioner's relationship with the district was contractual and not statutory,[3] it was not void

---

[3]As previously stated, the court also concluded that petitioner was a tenured, certificated employee before her husband was elected to the board, and she had a vested right to continued employment and could only be denied such vested or statu-

under section 1177 because the salary increase was not made in violation of section 1174. Said findings are supported by the evidence.

■ Appellants contend, however, that if section 1175.5 of the Education Code is interpreted to permit a conflict of interest that is prohibited by a general statute (§ 1090 of the Gov. Code), then section 1175.5 violates article IV, section 16, of the California Constitution which provides that a special statute is invalid if a general statute can be made applicable.

Section 1090 of the Government Code provides in part: "Members of the Legislature, state, county, special district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members." Section 1090 does not specifically refer to members of a governing board of a school district.[4] As previously stated, in section 1175.5 of the Education Code the Legislature expressly provided that the question of validity or invalidity of a contract or transaction entered into by the governing board of any school district "shall be exclusively governed by the provisions of the Education Code which are hereby declared to and shall supersede (1) any and all provisions of law contained in any code or law of this State, except those which specifically refer to members of the governing board of school districts . . . ." In view of such declaration of legislative intent, the trial court properly concluded that section 1174 of the Education Code applied herein and that sections 1090-1097 of the Government Code did not apply herein.

As above stated, appellants contend that section 1175.5 is a special statute that violates article IV, section 16 of the Constitution.[5] They assert that whether section 1175.5 is invalid depends upon the validity of the legislative classification therein. They concede that there is a "presumption of validity when a legislative classification is challenged." They argue, however, that such presumption fails if the classification does not reasonably

---

tory right in accordance with procedures in section 13304 et seq. of the Education Code.

[4] As the trial court concluded, section 1097 specifically refers to members of the governing board of school districts; however, said section provides criminal sanctions for members who wilfully violate a law.

[5] Appellants state that section 1175.5 is a special statute. There is no question herein regarding a local statute. " 'The public schools of this state are a matter of statewide rather than local or municipal concern; their establishment, regulation and operation are covered by the Constitution and the state Legislature is given comprehensive powers in relation thereto.' " (*Town of Atherton* v. *Superior Court,* 159 Cal.App.2d 417, 421 [324 P.2d 328], quoting from *Hall* v. *City of Taft,* 47 Cal.2d 177, 179 [302 P.2d 574].)

relate to the purposes of the conflict of interest laws which apply to the school district.

In *Sacramento Municipal Util. Dist.* v. *Spink,* 145 Cal.App.2d 568, 572-573 [303 P.2d 46], respondent contended that a law which permitted only utility districts with a population in excess of 250,000 to issue certain bonds violated the constitutional prohibition against a special law where a general law could be made applicable. In rejecting that contention, it was said: "The law is not special in the sense that it refers to the Sacramento Municipal Utility District. A law to be general in its scope need not include all classes. An act which applies uniformly to any single class in its entirety when the class is founded upon some natural intrinsic or constitutional classification is not special legislation." It was also said therein (pp. 572-573), quoting from *Sacramento M. U. Dist.* v. *P. G. & E. Co.,* 20 Cal.2d 684, 693 [128 P.2d 529]: " 'None of those constitutional principles is violated if the classification of persons or things affected by the legislation is not arbitrary and is based upon some difference in the classes having a substantial relation to the purpose for which the legislation was designed. [Citations.] A law to be general in its scope need not include all classes of individuals in the state. Nor is a classification void because it does not embrace within it every other class which might be included. [Citations.] Wide discretion is vested in the Legislature in making the classification and every presumption is in favor of the validity of the statute; the decision of the Legislature as to what is a sufficient distinction to warrant the classification will not be overthrown by the courts unless it is palpably arbitrary and beyond rational doubt erroneous. [Citations.] A distinction in legislation is not arbitrary if any set of facts reasonably can be conceived that would sustain it.' " (See *Alta Bldg. Material Co.* v. *Cameron,* 202 Cal.App.2d 299, 303 [20 Cal.Rptr. 713].)

Appellants assert that they "find no factual situation which would permit a rational distinction to be drawn" between the interest of petitioner's husband in her contract and the interest any other public official of the kind defined in section 1090 of the Government Code might have in a contract of his spouse; and that prior to the enactment of section 1175.5 of the Education Code, it was held in two cases (*People* v. *Darby,* 114 Cal.App. 2d 412 [250 P.2d 743], decided in 1952; and *People* v. *Elliott,* 115 Cal. App.2d 410 [252 P.2d 661], decided in 1953) that said section 1090 applied to school board members.

As previously stated, the Legislature expressly provided in section 1175.5 (enacted in 1963, about 10 years after those cited cases) that the question of validity of a contract or transaction entered into by the governing board

of any school district will be exclusively governed by provisions of the Education Code which were thereby declared to supersede any and all provisions of law contained in any code of this state, except those which specifically referred to members of the governing board of school districts. Section 1090 of the Government Code refers to many kinds of public officials and entities; however, it does not specifically refer to members of the governing board of a school district. Since the provisions of section 1090 of the Government Code were in existence when the Legislature enacted section 1175.5, presumedly the Legislature was aware of those provisions. The intent of the Legislature that questions as to validity of contracts by the governing board of a school district be exclusively determined by provisions of the Education Code have been expressed clearly. As above indicated, appellants make a general assertion that they "find no factual situation" that would permit an interest of petitioner's husband in her contract, as distinguished from an interest of any other public official in a contract of his spouse. Appellants, however, do not suggest a factual reason for their contention that the legislative classification herein does not reasonably relate to the purpose for which it was designed. As respondent states, several factual matters might reasonably be conceived for the Legislature's classification—e.g., the Legislature has provided special privileges, immunities, responsibilities and procedures regarding employees of school districts (such as special rights for tenured teachers, and special procedures for removal of such teachers), special procedures for election and regulation of members of governing boards of school districts, as distinguished from governing officers of other districts, and other rules and regulations peculiar to the educational system. As appellants concede, and as cited cases state, wide discretion is vested in the Legislature in making classification; and further, presumptions are in favor of validity of the statute. Appellants' contention that section 1175.5 of the Education Code violates article IV, section 16 of the Constitution is not sustainable.

In view of the above conclusions, it is not necessary to discuss respondent's contention (and the trial court's conclusion) to the effect that since the petitioner had become a tenured teacher several years before her husband was elected to the board, she had a statutory right that prevented her being removed from employment without a showing of cause in accordance with procedures in section 13304 et seq. of the Education Code, and which statutory right also precluded the withholding payment of her salary. In this respect, respondent cites *Abraham* v. *Sims,* 2 Cal.2d 698, 710-711 [34 P.2d 790, 42 P.2d 1029] wherein it was said: "One of the consequences [of tenure] is a permanent right to teach so long as the board's reasonable regulations are complied with, save in certain exceptional circumstances with which we are not here concerned. This right to

teach is an incident to classification as a permanent teacher and after three consecutive years of employment and service, and reelection by the board for the next succeeding school year, the law as of the beginning of that year automatically effects the classification and nothing more is required to accomplish it. . . . Under our statute, however, no affirmative action of the board is requisite to accomplish such reemployment. It is automatically done by virtue of sections 5.500 and 5.401 of the School Code, and a permanent teacher need not even notify the board of his acceptance, such notice under section 5.402 being only required of those not 'under permanent tenure.' The manifest implication is that unless he notifies the board to the contrary or fails to appear for the purpose of teaching at the opening of the school year he must be deemed to have accepted the reemployment. In these circumstances it is questionable whether under our own system what has occurred is very happily described as a 'reemployment' at all and whether it would not be more aptly designated as a 'continuance of an employment.' It is perfectly true, as said in *Martin* v. *Fisher,* 108 Cal. App. 34, 39 [29 Pac. 276], that 'the position of a teacher in the public schools of California is not an office.' It is strictly an employment and initiated by a contract. But, as said in the case last cited: 'The becoming a permanent teacher, and the continuation of this employment, is a right given by statute.' "

The judgment is affirmed.

Lillie, J., and Thompson, J., concurred.

A petition for a rehearing was denied April 10, 1974, and appellants' petition for a hearing by the Supreme Court was denied May 8, 1974.